UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ROBERT RIVET, | : | |
| | : | |
| Plaintiff, | : | Case No. C-1-02-164 |
| | : | |
| v. | : | |
| | : | Judge Dlott |
| FORD MOTOR COMPANY, | : | |
| | : | |
| Defendant. | : | |

**REPLY BRIEF OF DEFENDANT FORD MOTOR COMPANY
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

On July 21, 2003, Defendant Ford Motor Company ("Ford" or "Company") filed its Motion for Summary Judgment asking this Court to dismiss the Complaint filed by Plaintiff Robert Rivet ("Plaintiff") because Plaintiff cannot establish a triable issue of fact as to any of his claims.  On September 18, 2003, Plaintiff filed a Memorandum in Opposition to Ford's Motion for Summary Judgment ("Memo. Opp.") setting forth several arguments as to why summary judgment is inappropriate in this case.  First, Plaintiff alleges that an implied contract exists whereby Ford's ability to terminate Plaintiff's employment is limited by a "just cause" standard. Second, Plaintiff claims that Ford breached this alleged implied contract.  Third, Plaintiff alleges that he can establish a prima facie case of age discrimination.  Fourth, Plaintiff argues that Ford's stated reasons for Plaintiff's termination are a mere pretext for discrimination.  Finally, Plaintiff alleges that Ford discriminated against him in violation of the Employee Retirement Income Security Act ("ERISA") for exercising his rights under the VRS program to refuse the voluntary separation package he was offered in 1998.  With regard to each of these allegations, Plaintiff is simply wrong.

## II. LAW AND ARGUMENT

### A. No Implied Contract Existed Between Ford And Plaintiff

Plaintiff first alleges that it is Ford's practice to only terminate employees when just cause exists, and therefore an implied contract existed between Ford and Plaintiff. (See Memo. Opp. p. 7). However, as explained fully in Ford's Motion for Summary Judgment, Ohio is an "at-will" employment state. See, e.g., Mers v. Dispatch Printing Co., 19 Ohio St. 3d 100, 103 (1985); Baker v. Pease Co., No. 89-3985, 1995 U.S. App. LEXIS 550 (6th Cir. Jan. 9. 1995) (attached as Exhibit 12 to Ford's Motion for Summary Judgment). As such, an employer "may terminate the employment relationship *for any reason* which is not contrary to law." Mers, 19 Ohio St. 3d at 103 (emphasis added).

In the instant case, Plaintiff attempts to show that his employment relationship with Ford should be governed by a "just cause" standard and not the at-will employment standard by citing the deposition testimony of Ute aus dem Bruch, the Human Resources Planner in Marketing, Sales and Service. (See Memo. Opp. p. 8). However, Plaintiff's depiction of Ms. aus dem Bruch's testimony is erroneous. In fact, Ms. aus dem Bruch clearly testified that it is *not* Ford's practice to terminate an employee only for just cause, stating that "[a]ll of our employees are employees at-will," and "when employees sign their employee contract, it states in there that the employment may be terminated at any given time from either the employee's side or the company's side, *with or without cause*." (See Deposition of Ute aus dem Bruch, ("aus dem Bruch Dep."), p. 19) (emphasis added). Furthermore, Plaintiff himself fully admitted that he has absolutely no evidence that Ford has a policy and practice of terminating employees only for just cause. (See Deposition of Robert Rivet ("Pl. Dep."), pp. 105-06). In fact, Plaintiff stated that he could not name a single supervisor who ever expressed any such policy to him. (See Pl. Dep., pp. 108-09).

In essence, Plaintiff is attempting to confuse the Court by merging the concept of "fairness" with the legal standard of "just cause." Such an argument is wholly unsupported by case law and simply cannot be tolerated. See Ebie v. Teledyne Industries, Inc., 859 F.2d 152 (6th Cir. 1988) (holding that "a promise of fairness is vague and not equivalent to a just cause requirement . . .."); Dell v. Montgomery Ward and Co., Inc., 811 F.2d 970 (6th Cir. 1987) (holding that the progressive disciplinary policy adopted by the employer did not create a contract of employment calling for discharge only for just cause); Vana v. Mallinckrodt Medical, Inc., 849 F. Supp. 576, 582 (N.D. Ohio 1994) (holding that "[c]onveying to employees that they will be treated fairly and will only be dismissed based on sound business principals . . . does not convert an at-will relationship into contractual employment.").

Finally, case law is clear that Plaintiff's unsupported assertions as to his beliefs regarding the longevity or security of his employment, or Ford's ability to terminate his employment, are wholly irrelevant. See Baker v. Pease Co., No. 89-3985, 1995 U.S. App. LEXIS 550 (6th Cir. Jan. 9. 1995) (affirming a directed verdict to employer because "[a]bsent some indication of bargaining or a meeting of the minds, representations that employment will be terminated only for just cause are merely unilateral statements of company policy, insufficient to alter the at-will agreement."); Filichia v. Open Shelter, Inc., No. 96APE02-136, 1996 Ohio App. LEXIS 2747 (Franklin Cty. June 28, 1996) (attached as Exhibit 13 to Ford's Motion for Summary Judgment) (affirming summary judgment to the employer on the plaintiff's just cause claim because no written employment contract existed, nobody ever told the plaintiff he had a definite term of employment, and nobody told the plaintiff there needed to be a reason to terminate his employment); Beamon v. Bennett Management Corp., No. L-88-334, 1989 Ohio App. LEXIS 1819 (Lucas Cty. May 19, 1989) (attached as Exhibit 14 to Ford's Motion for Summary

Judgment) (affirming judgment for employer because no consideration was given by the plaintiff to change the employment at-will relationship).

In sum, despite Plaintiff's unsupported allegations to the contrary, Ford does not have a practice of terminating non-union employees only for just cause. Rather, all non-union Ford employees are employed as "at-will" employees, and Plaintiff's testimony that nobody ever represented otherwise to him only supports this fact.[1] As such, Ford is entitled to summary judgment as a matter of law on Plaintiff' claim that an implied contract existed between himself and Ford.

### B.    Ford Did Not Breach Any Alleged Implied Contract

Even assuming that an implied contract did exist between Plaintiff and Ford mandating that Ford could only discharge Plaintiff for just cause, which it did not, Plaintiff's claim still fails because Ford did not breach any alleged implied contract.

First, Plaintiff's argument that there is a genuine dispute of material fact regarding whether Plaintiff's job performance warranted termination is without merit. Case law is clear that, absent a clear legal violation, it is not a court's job to second-guess the business judgment of an employer. See Rush v. United Technologies, 930 F.2d 453, 458 (6th Cir. 1991).

For example, in Rush v. United Technologies, the appellant filed suit against his former employer following the termination of his employment. In granting summary judgment to the former employer, the Sixth Circuit held that "[w]e can well understand the disappointment, shock, and disbelief that [plaintiff] felt upon being terminated after 35 years of what appears to be loyal service to his employer. In upholding the discharge against legal challenge, we pass on

---

[1] Attached is a salaried employee "Employment Agreement" signed by Plaintiff upon his hire in 1975. (See Affidavit of Ute aus dem Bruch ("aus dem Bruch Aff."), ¶ 3) (attached hereto as Exhibit A). While this particular copy is virtually illegible, it is identical to all salaried employee Agreements which indicate that all salaried employees are at-will employees. (See aus dem Bruch Aff., ¶ 3) Attached hereto is a legible sample of the Agreement signed by salaried employees. (See aus dem Bruch Aff., ¶ 4).

4

neither its wisdom nor its humanity. In discharge cases, unless a clear legal violation is shown, *it is not appropriate for us to second guess the business judgment of employers in personnel matters*." Id. at 458 (emphasis added). See also Hasselbach v. Crown Battery Mfg. Co., No. 3:01CV7656, 2002 U.S. Dist. LEXIS 21755, at *10 (N.D. Ohio October 16, 2002) (attached hereto as Exhibit B) (holding that "[a] court . . . has neither the authority nor the duty to pass on the wisdom or humanity of" an employer's decision in personnel matters); Bush v. American Honda Motor Co., Inc., 227 F. Supp. 2d 780, 797 (S.D. Ohio 2002) (stating that "the Court is not here to second guess legitimate employment decisions made by employers" even if "the Court might have acted differently had it been the employer."); Olive v. Columbia/HCA Healthcare Corp., Nos. 75249 and 76349, 2000 Ohio App. LEXIS 914, at *14 (Cuyahoga Cty. Mar. 9, 2000) (attached as Exhibit 8 to Ford's Motion for Summary Judgment) (holding that the courts "must avoid stepping into the role of super personnel manager and must not second guess legitimate business decisions.") (internal citations and quotations omitted); Mers, 19 Ohio St. 3d at 103.

In accordance with the above-cited cases, this Court should not second-guess Ford's personnel decision to terminate Plaintiff's employment.

Second, Plaintiff alleges that Ford did not properly counsel Plaintiff prior to his termination. This allegation is totally disingenuous. In fact, Plaintiff admitted during his deposition that he received and signed all of the performance evaluations given to him during the twelve months prior to his termination. (See Pl. Dep., pp. 102, 104). Furthermore, each of the performance evaluations given to Plaintiff reflected his declining performance and the potential consequences if his performance continued to decline. (See Affidavit of Allen Walls ("Walls Aff."), Exhibits C, D, attached as Exhibit 1 to Ford's Motion for Summary Judgment; Affidavit of Jorge Castillejo ("Castillejo Aff."), Exhibits B, C, D, attached as Exhibit 2 to Ford's Motion

5

for Summary Judgment). Therefore, Plaintiff's attempt to argue that Ford failed to provide him with proper counseling is wholly without merit.

Nevertheless, in an attempt to support his claim that Ford failed to properly counsel him, Plaintiff asserts that Ford's documents state that when an employee receives a "Satisfactory Minus" performance rating, "[t]he employee may possess the talent to earn a higher rating if special training and counseling are given or if the employee is transferred to a more suitable position." (See Deposition of Steve Jefferson ("Jefferson Dep."), Exhibit 1). Similarly, if an employee receives an "Unsatisfactory" rating, "[u]pon consultation with the local Industrial Relations Manager, the employee will either be reassigned to a position of lesser responsibility or terminated." (Jefferson Dep., Exhibit 1). From these statements, Plaintiff makes the unsubstantiated leap that Ford breached the alleged contract with Plaintiff because it "failed to present any option to Plaintiff other than termination." (See Memo. Opp. p. 11). However, these documents in no way *require* Ford to present Plaintiff with any options. Rather, the options are solely at Ford's discretion and, in this case, Ford determined that Plaintiff's employment should be terminated. Therefore, there is no question that Ford did not violate its own procedures, as it was permitted to terminate Plaintiff's employment. Ford had options available, and chose the option that it determined to be most appropriate. As such, there is no genuine dispute of fact and there simply is no question for the jury to decide.

C.     **Plaintiff Cannot Establish A Prima Facie Case Of Age Discrimination**

Plaintiff next asserts that he can establish a prima facie case of age discrimination because he was qualified for his job and his termination allowed the retention of a younger employee. Once again, Plaintiff is simply wrong.

### 1. **Plaintiff was not qualified for his position**

Plaintiff first alleges that he was qualified for his position because he had a "long and successful record" at Ford. Plaintiff alleges that this claimed long and successful record satisfies the Chappell test. (Memo. Opp. p. 13). As no "test" was laid out in Chappell v. GTE Products Corp., 803 F.2d 261 (1986), Plaintiff's claim to have satisfied a particular "test" arising from that case is rather confusing.

At most, the Chappell court stated that the third element of a prima facie case of age discrimination, that a plaintiff was qualified for his position, may be replaced with a showing that "'he was doing his job well enough to meet his employer's legitimate expectations.'" Id. at 266 (quoting La Montagne v. American Convenience Products, Inc., 750 F.2d 1405, 1409 (7th Cir. 1984)). This was precisely the element that Ford addressed in its Motion for Summary Judgment. Despite Plaintiff's attempts to mislead the Court by pointing to his past performance evaluations, the law in the Sixth Circuit is definitive that such past performance evaluations are irrelevant to the determination of whether an employee is performing up to his employer's legitimate expectations *at the time of his termination*. See, e.g., Gregory v. Interface Flooring Systems, Inc., No. 93-4261, 1995 U.S. App. LEXIS 36182, at *10 (6th Cir. Sept. 8, 1995) (attached as Exhibit 5 to Ford's Motion for Summary Judgment); Moon v. Compass Group USA, Inc., No. C-980927, 1999 Ohio App. LEXIS 3951 (Hamilton Cty. Aug. 27, 1999) (attached as Exhibit 6 to Ford's Motion for Summary Judgment).

Plaintiff attempts to cast doubt on the validity of the cases cited by Ford in its Motion for Summary Judgment by pointing to the Sixth Circuit decision in Cline v. Catholic Diocese of Toledo, 206 F.3d 651 (6th Cir. 1999). However, Cline is easily distinguishable from the instant case. In Cline, the plaintiff had received a "glowing" performance evaluation after the employer concluded that it had grounds to terminate her employment, and she was allowed to continue

7

teaching for the remainder of the school year.  See id. at 657.  In light of these facts, the court concluded that the plaintiff had established that she was qualified for her position.  Id. at 666.

In the instant case, Plaintiff received progressively declining performance reviews the twelve months prior to his termination.  These declining performance reviews came from several different managers, clearly showing that Plaintiff was simply not performing at the level required by Ford.  Plaintiff attempts to show that he was performing at the required level by pointing to his performance reviews of "Excellent," "Satisfactory Plus," and "Satisfactory."  However, under Ford's performance evaluation system, a rating of "Excellent" does not mean that an employee is an "excellent" employee.  (See aus dem Bruch Aff. ¶ 6).  Rather, a rating of "Excellent" means an employee is performing at a level that is acceptable, but when compared with others with "Excellent Plus" and "Outstanding" ratings, shows there is room for improvement.  (See aus dem Bruch Aff. ¶ 6).  In fact, at the time he received an "Excellent" performance review, Plaintiff was one of the three *lowest* performers in the Cincinnati, Ohio region.  (See Affidavit of Allan Walls ("Walls Aff."), ¶ 8, attached as Exhibit 1 to Ford's Motion for Summary Judgment).

Likewise, an employee with a performance rating of "Satisfactory Plus" is performing at a level, when compared to others, is three levels below the highest performance rating given by Ford.  (See aus dem Bruch Aff., ¶ 7)  A "Satisfactory" rating is four levels below the highest performance rating given by Ford.  (See aus dem Bruch Aff., ¶ 7) An employee with a "Satisfactory Minus" rating is one step from termination.  (See aus dem Bruch Aff., ¶ 7).  Based upon this system of evaluation, Plaintiff's performance reviews clearly indicate, contrary to Plaintiff's "plain language" interpretation of the evaluation scores, that in Ford's view, Plaintiff was not performing at the level required by Ford at the time of his termination, and he is

therefore simply unable to show that he was qualified for his position. Even more importantly, Plaintiff has failed to come forward with a single shred of evidence that the decisions related to Plaintiff's performance evaluations were in any manner based upon Plaintiff's age. Absent such evidence, Plaintiff cannot establish his age discrimination claim.

### 2. Ford Did Not Improperly Combine The Issues Of Qualification And Pretext

Plaintiff also attempts to argue that Ford has improperly combined the prima facie and legitimate, nondiscriminatory reason steps of the McDonnell Douglas burden-shifting analysis by discussing whether Plaintiff was qualified for his position during the prima facie stage. (See Memo. Opp. p. 13). Plaintiff is mistaken.

A review of Sixth Circuit case law shows that an examination of whether an employee is qualified for his position is properly addressed during the prima facie stage of the McDonnell Douglas burden-shifting framework. See Anthony v. BTR Automotive Sealing Systems, 339 F.3d 506 (6th Cir. 2003); Murphy v. University of Cincinnati, No. 01-3376, 2003 U.S. App. LEXIS 15319 (6th Cir. July 29, 2003) (attached hereto as Exhibit C).

In Anthony, the appellant sued his employer for age and race discrimination after his employer refused to promote him. See Anthony, 339 F.3d at 514. In affirming the trial court's grant of summary judgment to the employer, the Sixth Circuit stated that because the appellant did not possess the qualifications necessary for the promotions he sought, he was "not qualified for the position, and he has failed to establish a prima facie case." Id. at 516.

Similarly, in Murphy, the appellant sued her former employer for sex discrimination following the termination of her employment. See Murphy, 2003 U.S. App. LEXIS 15319 at *4. The trial court granted summary judgment to the former employer and the appellant appealed. Id. at *5. In affirming the ruling of the trial court, the Sixth Circuit examined whether the

9

appellant could make a prima facie case of sex discrimination. Id. at *8. The Sixth Circuit held that she could not make out a prima facie case of discrimination because she was not qualified for her position. See id. at *13. Specifically, the court stated that, "the test in this Circuit for whether an employee was qualified for her position is whether she met the employer's *legitimate* expectations." Id. at *11 (emphasis in original). Furthermore, the court stated that although the appellant "may have met her employer's initial qualifications at hiring," she did not meet them at the time of her termination and was, therefore, not qualified to perform her job. Id. at **12-13. The court then concluded that the appellant, because she was not qualified for her position, could not make out a prima facie case of discrimination. See id. at *15.

In short, Plaintiff's attempt to show that Ford improperly merged the issues of qualification and pretext is simply without merit. As Sixth Circuit case law clearly holds, the discussion of an employee's qualifications for employment is properly examined during the prima facie stage of the McDonnell Douglas burden-shifting framework.

### 3. Plaintiff Has Provided No Evidence That His Termination Allowed The Retention And Promotion Of A Younger Employee

Even assuming Plaintiff could show that he was qualified for his position, Plaintiff still cannot prove a prima facie case of age discrimination because he cannot show that his termination allowed for the retention and promotion of a younger employee. First, as discussed in Ford's Motion for Summary Judgment and as admitted by Plaintiff in his Memorandum in Opposition, Plaintiff was replaced by Walter Murphy, an individual *older* than Plaintiff.

Second, Plaintiff alleges that his termination "paved the way for the promotion of Matt Ignatowski." (Memo. Opp. p. 14). In support of this allegation, Plaintiff cites the deposition testimony of Ms. aus dem Bruch. (Memo. Opp. p. 14). However, this reference to Ms. aus dem Bruch's testimony is misleading. At no time did Ms. aus dem Bruch testify that Plaintiff's

10

termination "paved the way for" Mr. Ignatowski's promotion.  Rather, Ms. aus dem Bruch simply testified that Mr. Ignatowski was promoted to Mr. Murphy's old position once Mr. Murphy undertook a voluntary demotion to the position vacated by Plaintiff.  (<u>See</u> aus dem Bruch Dep., p. 109).

Finally, Plaintiff once again attempts to argue that he should have been promoted to Mr. Murphy's former position instead of being terminated.  This reasoning is flawed for several reasons.  First, Plaintiff was already terminated at the time Mr. Murphy vacated his position.  Therefore, Plaintiff was not eligible to be promoted to Mr. Murphy's vacated position.  Second, the only "evidence" that Plaintiff presented in support of his argument that he should have been promoted rather than terminated is his self-serving and unsupported allegation that he "performed very well as a Customer Service Manager," and "had been ready to move into a DOM job for years."  (<u>See</u> Memo. Opp. p. 15).  As Plaintiff's performance reviews clearly show, this argument is wholly without merit.  Despite Plaintiff's allegations to the contrary, Plaintiff was simply unable to perform the job from which he was fired.  Therefore, it defies logic to argue that Plaintiff, rather than being terminated, should have been ***promoted***.  Additionally, applicable case law indicates that such a promotion was simply not required.  See <u>Meadows v. Ford Motor Company</u>, 21 Fed. Appx. 302, 304 (6th Cir. 2001) (rejecting the plaintiff's allegation that the defendants wrongfully failed to transfer him because the defendants legitimately determined that the plaintiff did not satisfy the necessary qualifications based upon his past record).

In sum, Plaintiff's argument that Ford had an obligation to not only retain him, but promote him, is simply without merit, and Plaintiff has failed to establish a <u>prima facie</u> case of age discrimination.  Therefore, Ford is entitled to summary judgment as a matter of law.

D.  **Plaintiff Cannot Prove That The Legitimate, Nondiscriminatory Reason Ford Offered For Plaintiff's Termination Is Pretextual**

Even if Plaintiff could establish a prima facie case of age discrimination, Ford is still entitled to summary judgment because Ford has provided a legitimate, nondiscriminatory reason for terminating Plaintiff's employment which Plaintiff cannot show is pretextual. Specifically, Ford terminated Plaintiff's employment because he failed to perform at the level legitimately expected by Ford and, despite Plaintiff's allegations to the contrary, Plaintiff has provided absolutely no evidence that this reason is a pretext for discrimination.

According to applicable case law, in order to survive a motion for summary judgment, Plaintiff must set forth legally sufficient evidence that the legitimate, nondiscriminatory reason provided by Ford is a pretext for age discrimination. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). However, it is not enough to simply disbelieve Ford's proffered reasons. Rather, Plaintiff must show "*both* that the reason was false and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (emphasis in original). In this case, Plaintiff has already admitted that he was given areas of improvement on each of the performance reviews he received during his employment with Ford in Cincinnati, Ohio. (See Pl. Dep., p. 29). This well-documented decline in Plaintiff's performance clearly indicates that he was not, in fact, improving in these areas.

Additionally, Plaintiff's subjective beliefs as to the level and quality of his performance are insufficient to establish that Ford's proffered reason is pretextual because Ford had an honest belief that Plaintiff's declining work performance warranted his dismissal. Case law in the Sixth Circuit is clear that an employee cannot establish that the proffered reason for his termination is pretextual if the employer had an honest belief in its reason. See Majewski v. Automatic Data Processing, Inc., 274 F.3d 1106, 1117 (6th Cir. 2001) (affirming summary judgment to former

employer and rejecting plaintiff's age discrimination claim because, under the "honest belief" rule, "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect.").

Furthermore, the "evidence" upon which Plaintiff relies in support of his contention that Ford's proffered reason is false is wholly insufficient. First, Plaintiff alleges that Ford's reason for terminating his employment is false because Steve Jefferson, Plaintiff's one-time supervisor, never saw the "negative traits" that ultimately lead to Plaintiff's termination. (See Memo. Opp. p. 17). However, Mr. Jefferson himself fully admitted that other managers and supervisors at Ford could have viewed Plaintiff's work performance differently than he did. (See Jefferson Dep., p. 60). Second, Plaintiff states that George Rivoli, one of Plaintiff's former supervisors, gave Plaintiff an "Excellent Plus" rating in 1997. (See Memo. Opp. p. 17). As fully discussed above, Plaintiff's performance reviews from four years prior to his termination are simply not relevant to the instant case, and this so-called "evidence" should be disregarded by the Court. See Murphy v. University of Cincinnati, No. 01-3376, 2003 U.S. App. LEXIS 15319 (6th Cir. July 29, 2003). Third, Plaintiff claims that Mr. Castillejo and Mr. Walls told Plaintiff in January of 2001 to find another job. (See Memo. Opp. p. 17). Even assuming this conversation took place, Plaintiff has utterly failed to show that this comment was age-related. Finally, Plaintiff claims that Ford's promotion of Mr. Ignatowski shows pretext because Plaintiff was qualified to perform the position into which Mr. Ignatowski was promoted. (See Memo. Opp. p. 17). As discussed above, Plaintiff has absolutely failed to provide any evidence that he was qualified for the position in question, and his conclusory, self-serving statements to the contrary do not

constitute sufficient evidence to rebut Plaintiff's legitimate, non-discriminatory reasons for his termination.

Finally, even assuming that Plaintiff can show that Ford's proffered reason is false, Plaintiff's claim still fails because Plaintiff has failed to provide *any* evidence that age discrimination was the real reason for his termination. See Hicks, 509 U.S. at 515. Indeed, Plaintiff does not even allege that he has provided evidence that discrimination was the true motivation behind his termination. Rather, Plaintiff merely states that "[t]here is a factual dispute regarding whether Plaintiff's performance was the true motivation of Ford's desire to terminate him." (See Memo. Opp. p. 18). Such an allegation simply fails to meet the standard set forth in St. Mary's Honor Ctr. v. Hicks. Therefore, because Plaintiff simply cannot show that Ford's proffered reason for his termination is a mere pretext for age discrimination, Plaintiff's claim fails as a matter of law.[2]

**E.      Ford Did Not Violate 29 U.S.C. § 1140 By Terminating Plaintiff's Employment**

Plaintiff next argues that Ford violated ERISA by allegedly terminating him for exercising his rights under the VRS program to refuse the voluntary separation package he was offered in 1998. Once again, Plaintiff's allegation is entirely without merit.

First, it must be noted that Plaintiff alleged in his Complaint that Ford "discriminated" against him in violation of ERISA. (See Amended Complaint, ¶ 16). However, Plaintiff is actually alleging that Ford *retaliated* against him by terminating his employment after he refused the VRS package. Because Plaintiff did not properly plead a retaliation claim, the Court should dismiss Plaintiff's retaliation claim outright. See, e.g., White v. Mount Carmel Medical Ctr., 150

---

[2] Following his argument that there is sufficient proof on the statutory claim of age discrimination, Plaintiff makes the statement that "the same result should follow for Plaintiff's public policy action." (See Memo. Opp. p. 18). However, Plaintiff has failed to provide any evidence to support his public policy claim. As such, as set forth in Ford's Motion for Summary Judgment, the Court should dismiss Plaintiff's public policy claim outright.

Ohio App. 3d 316, 326 (Franklin Cty. 2002) (holding that a plaintiff may not successfully rebut a motion for summary judgment by merely raising new theories of recovery in its memorandum in opposition).

Even assuming that Plaintiff did properly plead a ERISA retaliation claim, Plaintiff's claim still fails because he cannot establish a prima facie case of an ERISA § 510 claim, nor can Plaintiff show that the legitimate, nondiscriminatory reason Ford provided for the termination of Plaintiff's employment is a mere pretext for discrimination.

### 1. Plaintiff Cannot Establish A Prima Facie Case Of An ERISA § 510 Violation

In order to state a prima facie case of a Section 510 violation, Plaintiff must prove that there was "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." Humphreys v. Bellaire Corp., 966 F.2d 1037, 1043 (6th Cir. 1992). Furthermore, Plaintiff must show that Ford "made the decision to discharge him *with the specific intent to violate ERISA*." Sherman v. Chase Packaging Corp., No. 90-4033, 1991 U.S. App. LEXIS 11652, at *9 (6th Cir. May 21, 1991) (attached as Exhibit 9 to Ford's Motion for Summary Judgment). Case law indicates that a significant passage of time between an ERISA-protected activity and the termination of an employee's employment indicates a lack of specific intent to violate ERISA. See Dinsdale v. Wesley, No. C98-0123, 2000 U.S. Dist. LEXIS 12015 (N.D. Iowa April 13, 2000) (attached hereto as Exhibit D) (holding that the four-year time span between the termination of the plaintiff's employment and the vesting of her benefits "does not lend [any] inference of discrimination . . . ."); Humes v. McDonnell Douglas Corp., 922 F. Supp. 229 (E.D. Mo. 1996) (holding that "'[a]ny possible inference of intentional interference is eliminated by the several years time-span between the date of lay-off and the date of vesting of any additional benefits.'")

(quoting Rogic v. Mallinckrodt Medical Inc, 917 F. Supp. 671 (E.D. Mo. 1996)).

In the instant case, Plaintiff was offered the VRS package in 1998 because he was one of the lowest performers working for Ford in the Cincinnati, Ohio region. (See Walls Aff., ¶ 8). Plaintiff declined to accept this package, as he was entitled to do, and he continued his employment with Ford *for another three years*. This three-year time frame between his rejection of the VRS package and the termination of his employment clearly shows that the termination of his employment was unrelated to his refusal to accept the VRS package. Dinsdale v. Wesley, No. C98-0123, 2000 U.S. Dist. LEXIS 12015 (N.D. Iowa April 13, 2000); Humes v. McDonnell Douglas Corp., 922 F. Supp. 229 (E.D. Mo. 1996).

Plaintiff's attempts to show that the VRS package was a contributing factor in the termination of Plaintiff's employment are also unconvincing. The undisputed evidence shows that Mr. Jefferson specifically testified that Al Walls never indicated that Plaintiff was to be punished or have his performance downgraded because of his refusal to take the VRS package. (See Jefferson Dep., pp. 60-61). Contrary to Plaintiff's assertions in his Memorandum in Opposition at page 4 that Mr. Walls downgraded Plaintiff's performance evaluation, Mr. Jefferson testified that he never saw the performance evaluation both he and Mr. Castillejo did for Plaintiff, and is therefore unable to say that Mr. Walls changed that performance evaluation. (See Jefferson Dep., p. 62). Rather, the undisputed evidence on this point is from the author of this review, Jorge Castillejo, who stated that the rating of "Excellent" on Plaintiff's January 14, 2000 performance review "was a compromise between myself and Steve Jefferson, Mr. Rivet's other supervisor, because I felt that Mr. Rivet deserved a 'Satisfactory Plus' rating while Mr. Jefferson felt that Mr. Rivet deserved an 'Excellent Plus' rating." (See Castillejo Aff., ¶ 4). Additionally, Ms. aus dem Bruch specifically testified that her inclusion of the fact that Plaintiff

16

turned down the VRS package in her report to her supervisor, Richard Gross, was done solely to inform Mr. Gross of Plaintiff's performance history and to let Mr. Gross know that Plaintiff was selected for the VRS package in 1998 because he was one of the lowest three performers in the Cincinnati region. (See aus dem Bruch Dep., p. 97). Finally, Mr. Gross specifically stated that Plaintiff's refusal to accept the VRS package in 1998 "would not be relevant" to the decision to terminate his employment, and, in fact, "had no relevance" to Mr. Gross's decision. (See Deposition of Richard Gross ("Gross Dep."), p. 20).[3]

In sum, in addition to Plaintiff's admission that his termination "had nothing to do with" his pension benefits (see Pl. Dep., p. 159), Plaintiff simply cannot provide any evidence that Ford specifically intended to interfere with his rights under ERISA, or retaliate against Plaintiff for refusing the VRS package three years prior to his termination. As such, Plaintiff cannot establish a prima facie case of an ERISA Section 510 violation, and Ford is entitled to summary judgment as a matter of law.

### 2. Plaintiff Cannot Show That Ford's Proffered Reason For His Termination Is Pretextual

As fully discussed above and in Ford's Motion for Summary Judgment, Ford has articulated a legitimate, nondiscriminatory reason for terminating Plaintiff's employment which Plaintiff cannot show was a mere pretext for discrimination. Specifically, Ford terminated Plaintiff's employment because he was no longer performing his job in accordance with Ford's legitimate expectations. Plaintiff has provided absolutely no evidence to refute this reason or to show that the real reason for Plaintiff's termination was age discrimination. Therefore, Ford is

---

[3] Furthermore, the language of the VRS clearly shows that Ford reserves the right to terminate employees who refuse a VRS package, not in retaliation for refusing the package, but if the circumstances so warrant. Indeed, the VRS states: "[y]our election to accept the 98 VRS offer and separate from Company employment is your voluntary decision. If you reject the Company's offer, your employment will not be affected as a result of that decision. *As always, however, the Company reserves the right to restructure and reorganize jobs*." (Gross Dep., Exhibit 1) (emphasis added).

entitled to summary judgment as a matter of law.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).

### III. CONCLUSION

For the foregoing reasons and the reasons set forth in Ford's Motion for Summary Judgment, Ford respectfully requests that the Court grant summary judgment in its favor and dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

s/Ellen J. Garling
Ellen J. Garling (0043554)
Trial Attorney
Jeffrey L. VanWay (0069175)
William R. Post (0072655)
Of Counsel
BAKER & HOSTETLER LLP
65 East State Street, Suite 2100
Columbus, Ohio 43215
(614) 228-1541
(614) 462-2616 (facsimile)

Attorneys for Defendant
Ford Motor Company

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 17, 2003, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all parties by operation of the Court's electronic system.  Parties may access this filing through the Court's system.

s/Ellen J. Garling
Ellen J. Garling