LEXSEE 2002 U.S. DIST. LEXIS 21755

Anne D. Hasselbach, Plaintiff v. Crown Battery Manufacturing Co., et al., Defendant

Case No. 3:01CV7656

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, WESTERN DIVISION

2002 U.S. Dist. LEXIS 21755

October 16, 2002, Opinion Filed

NOTICE: [*1] NOT FOR PUBLICATION

DISPOSITION: Defendant's motion for summary judgment granted.

CASE SUMMARY:

PROCEDURAL POSTURE: In an employment discrimination case, plaintiff former employee claimed that defendant former employer fired her on the basis of her gender, in violation of Title VII, *42 U.S.C.S. § 2000e* et seq., and due to her pregnancy, in violation of the Family Medical Leave Act, *29 U.S.C.S. § 2601* et seq. The employer moved for summary judgment.

OVERVIEW: The employee was a probationary employee, and she knew that any lateness would be counted as a violation of the company's attendance requirements. She was fired when, on her third occurrence, she was one minute late for work. According to the employee, the human resources manager who fired her knew that the employee was pregnant at the time. The manager denied having known of the pregnancy. The employee's job was filled by a woman. The court found that a doctor's note given to the manager from the employee's obstetrician did not support an inference of knowledge of pregnancy because it made no reference to pregnancy. A reference to a pre-natal vitamin by name in a report resulting from a company physical did not support an inference of knowledge of pregnancy because there was no proof that the manager ever saw the report or knew what the vitamin was. The employee's weight gain did not support knowledge of pregnancy because there was no evidence that the manager noticed the gain. Lastly, the manager's ambiguous reference to the FMLA, without more, was not enough to show a discriminatory motive.

OUTCOME: The motion for summary judgment was granted.

LexisNexis (TM) HEADNOTES - Core Concepts:

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN1] Although the general rule in federal courts is that drawing an inference from another inference is not prohibited, this view is subject to the limitation that all such inferences must be reasonable. Where the inferences are only "merely colorable," they are not sufficient withstand a motion for summary judgment.

*Labor & Employment Law > Discrimination > Actionable Discrimination*
[HN2] The issue in a discrimination case is not whether the basis on which the employer acted in taking a personnel action is "sound;" rather, the issue is whether the reasons articulated by the employer are a pretext for discrimination. A court has neither the authority nor duty to pass on the wisdom or humanity of the employer's decision: In discharge cases, unless a clear legal violation is shown, it is not appropriate for the court to second guess the business judgment of employers in personnel matters.

COUNSEL: For Anne D. Hasselbach, Plaintiff: Joseph P. McCafferty, Cleveland, OH.

For Crown Battery Manufacturing Co., Ann Woolf, Defendants: Latha M. Srinivasan, Todd F. Palmer, Calfee, Halter & Griswold, Cleveland, OH.

**JUDGES:** James G. Carr, United States District Judge.

**OPINIONBY:** James G. Carr

**OPINION:**

ORDER

This is an employment discrimination case in which the plaintiff, Anne D. Hasselbach, claims that the defendant, Crown Battery Manufacturing Company (Crown), fired her on the basis of her gender, in violation of Title VII, *42 U.S.C. § 2000e* et seq., and due to her pregnancy, in violation of the Family Medical Leave Act, *29 U.S.C. § 2601* et seq. Pending is Crown's motion for summary judgment. For the reasons that follow, that motion shall be granted.

**Background**

Crown hired plaintiff as a part-time employee on March 27, 2000. Plaintiff became a full-time probationary employee on December 11, 2000, when, after she expressed a desire to work full-time, a vacancy arose in her department.

During the less than nine-month period of plaintiff's part-time employment, she [*2] was tardy or absent thirty-nine times. Her supervisor expressed concerns to plaintiff that her tardiness was becoming habitual and she should try to control it. Because, apparently, plaintiff was working flexible hours as a part-time employee, she was, despite her attendance problems, able to perform the duties required of her.

When plaintiff switched to full-time employment, she understood that she became a probationary employee, and would be required to comply with new-hire procedures, including Crown's attendance policy, as stated in the company's employee handbook. Plaintiff had received a copy of the handbook at the outset of her employment.

The handbook set forth Crown's requirements for attendance for probationary employees, and provided that a combination of three occurrences of absence or tardiness would result in either discharge or extension of the probationary period. Plaintiff was aware that any lateness, even by as small an amount as a single minute, would be deemed an occurrence of tardiness that would be counted as a violation of the company's attendance requirements.

On January 3, 2001, about three weeks after becoming a full-time probationary employee, plaintiff [*3] returned late from lunch. She was charged with one occurrence of tardiness. On January 26, 2001, about three weeks thereafter, plaintiff left work early due to an unspecified illness, and a second occurrence was charged to her.

Her early departure was due to the fact that plaintiff was pregnant, and needed to see her doctor. Plaintiff did not tell anyone at Crown that she was ill due to pregnancy. A week earlier plaintiff had left a note from her ob-gyn physician on the desk of Crown's Human Resources Manager, Ann Woolf. That note did not indicate that plaintiff was pregnant.

In the meantime, plaintiff had had a company physical examination on January 24, 2001. The report of that examination, which was sent to the Human Resources Department, listed by name, but without further explanation, a pre-natal vitamin as plaintiff's only medication.

In light of the two occurrences, Woolf told plaintiff's supervisor, Victor Flores, on January 29, 2001, that if plaintiff had one more occurrence, she would be terminated. She also asked Flores to conduct plaintiff's thirty-day evaluation, and to emphasize the consequences of another occurrence.

Flores met with plaintiff the next day, January 30, 2001. He [*4] told her that a third occurrence or absence or tardiness during the remaining probationary period would result in her discharge. Plaintiff signed a form acknowledging Flores' warning.

Plaintiff told Flores that she was pregnant. Flores advised her to tell Woolf about the pregnancy. Plaintiff later testified during her deposition that she was reluctant to tell Woolf about her condition because she was afraid it would lead to her termination. She admitted, however, that she had no basis in either her experiences at Crown or anything she had heard while there for such concern.

According to plaintiff, Flores stated, after being informed by plaintiff that she was pregnant, "that's what [Woolf]'s talking about you taking the FMLA leave." This statement, plaintiff contends, along with the note from her doctor, the notation on her physical examination about the pre-natal vitamin, and visible weight gain in her midriff, gives rise to a genuine dispute as to whether Wolff was aware that plaintiff was pregnant when she fired the plaintiff.

That fact is material, because Woolf denies having known of plaintiff's pregnancy before she terminated plaintiff on the following day, January 31, 2001, after [*5] plaintiff arrived one minute late to work due to a train delay. On learning from plaintiff that she was late, Flores told Woolf; Woolf, in turn, told Flores that plaintiff was to be discharged.

At that point, Flores told Woolf that plaintiff had told him that she was pregnant. Woolf reconfirmed her decision to discharge the plaintiff for tardiness because her lateness did not appear to be related to pregnancy.

Woolf met with plaintiff, who acknowledged her tardiness. Plaintiff asked to have her probationary period extended and to be allowed to work flexible hours. Woolf denied that request. Plaintiff asked what her pregnancy had to do with her termination; Woolf told her that pregnancy had nothing to do with her decision.

During the late 1990s, Crown had taken a fairly liberal approach to requests to extend probation for probationary employees who had had three attendance occurrences. As a result of changes in the labor market, which made it easier for Crown to hire new employees, Crown's enforcement of its attendance policy became more rigid. In 2000, Crown gave probation extensions to fourteen employees. In 2001, in contrast, Crown extended probation to only seven employees. Similarly, [*6] Crown fired thirty-four probationary employees for noncompliance with the attendance policy in 2000. Crown fired fifty-six probationary employees in 2001 for noncompliance with the policy.

Plaintiff's job was filled by a woman.

**Discussion**

Crown claims that Woolf fired plaintiff pursuant to its attendance policy for probationary employees, and that, when she decided to do so, she was not aware that plaintiff was pregnant. It also contends that it had become less lenient in its enforcement of its policy by the time that plaintiff was terminated.

Plaintiff claims that, contrary to Woolf's protestations of ignorance, the record supports the inference that Woolf was aware of plaintiff's pregnancy before invoking the attendance policy, and that Woolf was motivated by a desire not to grant FMLA leave to plaintiff when she refused plaintiff's request that her probation be extended, as it had been for other employees in the past.

If Woolf was unaware that plaintiff was pregnant when she decided the fire her, defendant is entitled to summary judgment. See *Landefeld v. Marion General Hosp., Inc., 994 F.2d 1178, 1181 (6th Cir. 1993)* (no evidentiary basis for claim of [*7] handicap discrimination where decision-maker was unaware of plaintiff's condition).

There is no direct proof that Woolf had such knowledge. Instead, plaintiff attempts to create an inference of such knowledge from: the note she placed on Woolf's desk from her ob-gyn doctor, the reference to a pre-natal vitamin in a physical examination sent to the Human Resources Department, weight gain in her midriff, and Flores' comment about "that's what [Woolf]'s talking about you taking the FMLA leave."

[HN1] Although "the general rule in federal courts is that drawing an inference from another inference is not prohibited, this view is subject to the limitation that all such inferences must be reasonable. *Muller v. U.S. Postal Service, 811 F. Supp. 325, 327 (N.D. Ohio 1992)*. As the Sixth Circuit noted in *Bills v. Aseltine, 958 F.2d 697, 708 (6th Cir. 1992)* (citing *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505-50 (1986)*, "facts may be established by inference, but the inferences must be reasonable ones." Id. Where the inferences are only "'merely colorable'", they are not sufficient withstand a motion for summary judgment. Id.

The ob-gyn [*8] doctor's note does not support an inference of knowledge of pregnancy because it makes no reference to pregnancy. The reference in a medical report sent to Woolf's department does not support an inference of knowledge of pregnancy because there is no proof that Woolf ever saw the report of plaintiff's medical examination, or, even if she had seen it, that she knew what the vitamin was and what it was for. Any weight gain in plaintiff's midriff does not support knowledge of pregnancy on Woolf's part because there is no evidence that Woolf ever noticed such gain.

The strand on which plaintiff hangs her claim that Woolf was aware that she was pregnant, and that that knowledge motivated her decision to terminate her is Flores' comment, made in response to her statement to him that she was pregnant, "that's what [Woolf]'s talking about you taking the FMLA leave."

Aside from that statement by Flores, there is no evidence about what Woolf said about plaintiff and the FMLA. There is likewise no evidence that whatever Woolf said manifested any discriminatory animus. An ambiguous reference to the FMLA, without more, is not enough to show discriminatory motive on Woolf's part. See *Cooley v. Carmike Cinemas, Inc., 25 F.3d 1325, 1331 (6th Cir. 1994)* [*9] (plaintiff has "burden to prove by the preponderance of the evidence that [decision maker's] resentful comments against the aged were not vague, ambiguous, or isolated."). All that we know is that Woolf made some reference to plaintiff and the FMLA. We do no know whether that statement was "resentful," much less, as in Cooley, "highly evocative" of discriminatory animus.

Whatever Woolf said cannot sustain a reasonable inference of discriminatory animus and resulting discriminatory motive sufficient to overcome defendant's legitimate, articulated reason for its termination of the plaintiff. A rationale trier of fact could not, on the basis

of this record, draw the inference that it was more likely than not that discriminatory animus relating to plaintiff's pregnancy played a determinative role, rather than plaintiff's tardiness, in the decision to fire the plaintiff. Plaintiff has not shown that she has sufficient evidence to meet her burden of proving that Crown's statement that it fired her pursuant to its attendance policy is offered as a pretext to mask discrimination or an intent to evade its obligations under the FMLA.

Crown's policy and its enforcement may have been severe [*10] and even unfair. But [HN2] "the issue in a discrimination case is not whether the basis on which the employer acted in taking a personnel action is 'sound'; rather, the issue is whether the reasons articulated by the employer are a pretext for discrimination." *In re Lewis, 845 F.2d 624, 633 (6th Cir.1988)*. As in *Rush v. United Technologies, Otis Elevator Div., 930 F.2d 453, 457 (6th Cir. 1991)*, one can "well understand the disappointment, shock, and disbelief that [plaintiff] felt upon being terminated." A court, however, has neither the authority nor duty to pass on the wisdom or humanity of the employer's decision: "In discharge cases, unless a clear legal violation is shown, it is not appropriate for us to second guess the business judgment of employers in personnel matters." Id.

### Conclusion

Inferences can support a judgment. But those inferences must be reasonable, and have an adequate foundation. In this case there is an insufficient evidentiary basis on which to sustain a finding that plaintiff could overcome defendant's stated, and legitimate, reason for firing her.

It is, therefore,

ORDERED THAT defendant's motion for summary judgment [*11] be, and the same hereby is granted.

So ordered.

/s/ James G. Carr

United States District Judge