Exhibit D

LEXSEE 2000 U.S. DIST. LEXIS 12015

PATRICIA L. DINSDALE, Plaintiff, vs. SCOTT FORESMAN-ADDISON WESLEY, ROBERT GOLL, and GERALD FOOS, Defendants.

No. C98-0123

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF IOWA, CEDAR RAPIDS DIVISION

2000 U.S. Dist. LEXIS 12015; 10 Am. Disabilities Cas. (BNA) 1400

April 13, 2000, Decided

**DISPOSITION:** [*1] Defendant's February 1, 2000, motion for summary judgment (docket number 12) granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant employer moved for summary judgment in plaintiff's employment discrimination action on the ground that plaintiff was properly terminated for poor job performance, where plaintiff alleged violations of the Americans With Disabilities Act, 42 U.S.C.S. § 12101 et seq., and the Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq.

**OVERVIEW:** Plaintiff alleged that defendant employer terminated plaintiff based on her disability in violation of the Americans With Disabilities Act, 42 U.S.C.S. § 12101 et seq., and to interfere with plaintiff's employment benefits in violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq. The court held that, while it was undisputed that plaintiff's cancer constituted an impairment, plaintiff was not disabled within the meaning of the statute since plaintiff's ability to perform the essential functions of her employment precluded a finding that plaintiff was substantially limited in the major life activity of working. Further, defendant's termination of plaintiff four years prior to the vesting of retirement benefits did not indicate the specific intent to avoid paying such benefits to plaintiff, where the evidence indicated that plaintiff was terminated based on plaintiff's unsatisfactory job evaluations, unresponsiveness to customer complaints, and lack of success in meeting sales goals.

**OUTCOME:** Motion for summary judgment was granted; plaintiff's ability to perform essential job functions precluded a finding that plaintiff was disabled, and defendant employer's evidence establishing plaintiff's poor job performance justified termination in the absence of a showing that defendant specifically intended to deprive plaintiff of employee benefits.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN1] A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*
[HN2] Once the movant for summary judgment has properly supported its motion, the nonmovant may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*
[HN3] To preclude the entry of summary judgment, the nonmovant must show that, on an element essential to its case and on which it will bear the burden of proof at trial, there are genuine issues of material fact.

Case 1:02-cv-00164-MHW   Document 36-5   Filed 10/17/2003   Page 2 of 6

Page 2
2000 U.S. Dist. LEXIS 12015, *; 10 Am. Disabilities Cas. (BNA) 1400

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*
[HN4] Although direct proof is not required to create a jury question, to avoid summary judgment, the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN5] In applying the summary judgment standards, the court must give the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence.

*Civil Procedure > Summary Judgment > Summary Judgment StandardLabor & Employment Law > Discrimination > Actionable Discrimination*
[HN6] In the context of employment discrimination cases, summary judgment should be used sparingly. Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant. In applying these standards, the court must give the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence.

*Labor & Employment Law > Discrimination > Disability Discrimination > Other Laws*
[HN7] The Americans With Disabilities Act, *42 U.S.C.S. § 12101* et seq., prohibits discrimination by an employer against a qualified individual with a disability because of the disability of such individual. *42 U.S.C.S. § 12112*(a).

*Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & DefinitionsLabor & Employment Law > Discrimination > Disability Discrimination > Other Laws*
[HN8] To obtain relief under the Americans With Disabilities Act (ADA), *42 U.S.C.S. § 12101* et seq., the plaintiff must prove that she was disabled within the meaning of the ADA, that with or without reasonable accommodations, she was able to perform the essential functions of her job, and that the employer discharged her in whole or in part because of her disability.

*Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions*
[HN9] Under the Americans With Disabilities Act, *42 U.S.C.S. § 12101* et seq., a disability is defined as (1) a physical or mental impairment that substantially limits one or more of the major life activities; (2) a record of such an impairment; or (3) being regarded as having such an impairment. *42 U.S.C.S. § 12102* (2). An impairment is any physiological disorder, cosmetic disfigurement, or anatomical loss affecting one of the body's systems, or any mental disorder. *29 C.F.R. § 1630.2(h)*. Major life activities include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. *29 C.F.R. § 1630.2(i)*. Sitting, standing, lifting and reaching are also considered major life activities.

*Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions*
[HN10] For disability purposes, substantially limited is defined as (1) unable to perform a major life activity that the average person in the general population can perform; or (2) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average population can perform the same major life activity. *29 C.F.R. 1630.2(j)(1)*.

*Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions*
[HN11] The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. Rather, a person claiming a disability must show that the impairment significantly restricts her ability to perform a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.

*Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions*
[HN12] Factors to be considered in assessing whether an individual is substantially limited in a major life activity are the following: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; (3) the permanent or long-term impact, or the expected long-term impact of the resulting impairment. *29 C.F.R. § 1630.2(j)(2)*. The determination of whether an individual is substantially limited in a major life activity must take into account mitigating measures, such as medicines and assistive devices.

*Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions*
[HN13] If the plaintiff produces sufficient evidence from which a reasonable trier of fact could find elements of her prima facie disability discrimination case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its decision to fire the plaintiff. Then, if the defendant meets its burden, the plaintiff must produce sufficient evidence from

Case 1:02-cv-00164-MHW    Document 36-5    Filed 10/17/2003    Page 3 of 6

Page 3
2000 U.S. Dist. LEXIS 12015, *; 10 Am. Disabilities Cas. (BNA) 1400

which a reasonable trier of fact could find the defendant's explanation to be a pretext, and the real reason for its failure to hire the plaintiff was intentional discrimination.

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions**
[HN14] See *29 U.S.C.S. § 1140*.

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions**
[HN15] To make out a prima facie case of retaliation under the Employee Retirement Income Security Act of 1974, *29 U.S.C.S. § 1001* et seq., the plaintiff must prove that: (1) she participated in a statutorily protected activity; (2) that an adverse employment action was taken against her; and (3) that a causal connection existed between the two.

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions**
[HN16] Using the burden-shifting analysis, if the plaintiff makes out a prima facie case of retaliation under the Employee Retirement Income Security Act of 1974, *29 U.S.C.S. § 1001* et seq., the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the plaintiff's discharge. Then, if the defendant meets this burden, the plaintiff will prevail only if she can prove that the employer's proffered reason for the discharge is pretextual by presenting evidence that the employer acted with specific intent to interfere with her rights. This specific intent can be shown with circumstantial evidence, but must be more specific than mere conjecture.

**COUNSEL:** For PATRICIA L DINSDALE, plaintiff: Richard E Mundy, Cedar Rapids, IA.

For SCOTT FORESMAN-ADDISON WESLEY, ROBERT GOLL, GERALD FOOS, defendants: Kelly R Baier, FAX ATTY, Bradley & Riley, Cedar Rapids, IA.

**JUDGES:** JOHN A. JARVEY, Magistrate Judge, UNITED STATES DISTRICT COURT.

**OPINIONBY:** JOHN A. JARVEY

**OPINION:**

   **ORDER**

This matter comes before the court pursuant to the defendant's February 1, 2000, motion for summary judgment (docket number 12). The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to Title 28 § 636(c). Oral argument on the motion was heard March 3, 2000. For the reasons set forth below, the defendant's motion is granted.

   Background

The plaintiff, Patricia Dinsdale, claims that Scott Foresman-Addison Wesley terminated her employment in violation of the Americans with Disabilities Act (ADA), *42 U.S.C. § 12101*, et seq.; the Employment Retirement Income Security Act of 1974 (ERISA), *29 U.S.C. § 1001* et seq.; and the disability provision of the Iowa Civil Rights Act (ICRA), [*2] Iowa Code § 216.1 et seq. (Plaintiff withdrew and dismissed her claims of discrimination on the basis of age and sex at the hearing as well as claims against two individual employees of Scott Foresman-Addison Wesley.)

   Summary Judgment
   [HN1]
A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *Kegel v. Runnels, 793 F.2d 924, 926 (8th Cir. 1986)*. [HN2] Once the movant has properly supported its motion, the nonmovant "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). " [HN3] To preclude the entry of summary judgment, the nonmovant must show that, on an element essential to [its] case and on which [it] will bear the burden of proof at trial, there are genuine issues of material fact." *Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir. 1987)*, cert denied, *484 U.S. 1014, 98 L. Ed. 2d 668, 108 S. Ct. 718 (1988)* [*3] (citing *Celotex Corp. v. Catrett, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986))*. [HN4] Although "direct proof is not required to create a jury question, . . . to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985)*, cert denied, *474 U.S. 1057 (1986)* (quoting *Impro Prod., Inc. v. Herrick, 715 F.2d 1267, 1272 (8th Cir. 1983)*, cert denied, *465 U.S. 1026, 79 L. Ed. 2d 686, 104 S. Ct. 1282 (1984))*. [HN5] In applying these standards, the court must give the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence. *Krause v. Perryman, 827 F.2d 346, 350 (8th Cir. 1987)*.
   [HN6]
In the context of employment discrimination cases, summary judgment should be used sparingly. *Hardin v.*

Case 1:02-cv-00164-MHW   Document 36-5   Filed 10/17/2003   Page 4 of 6

Page 4
2000 U.S. Dist. LEXIS 12015, *; 10 Am. Disabilities Cas. (BNA) 1400

*Hussmann, 45 F.3d 262, 264 (8th Cir. 1995)*(citations omitted). "'Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence [*4] could not support any reasonable inference for the nonmovant.'" *Wooten v. Farmland Foods, 58 F.3d 382, 385 (8th Cir. 1995)* (quoting *Crawford v. Runyon, 37 F.3d 1338, 1340 (8th Cir. 1994))*. In applying these standards, the court must give the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence. *Krause v. Perryman, 827 F.2d 346, 350 (8th Cir. 1987).*

Statement of Material Facts Not in Dispute

The plaintiff was hired in 1991 by the defendant as a book sales representative for schools (grades K-12) in 85 Iowa counties. In 1992, Ms. Dinsdale's job evaluation rated her "below expectations" in several areas, including being unresponsive to customers. In 1993, Ms. Dinsdale was again "below expectations" in her performance rating, with customer complaints of unresponsiveness. In 1995, the plaintiff's job evaluation met the expectations of the defendant, but the evaluation noted she still needed to improve her follow-up with customers. In April 1996, Ms. Dinsdale was diagnosed with colon cancer and underwent surgery. On April 17, 1996, she took a medical leave, estimating her return-to-work on [*5] June 1, 1996. On May 13, 1996, Ms. Dinsdale began chemotherapy (which ended November 1, 1996), and on May 28, 1996, she provided the defendant with a doctor's note indicating that she could return to work on a part-time basis June 3, 1996.

Meanwhile, on April 1, 1996, Scott Foresman merged with Addison Wesley Longman, Inc., and as a result of the merger, there was some overlap of employees and some layoffs were necessary. Management conducted employee interviews to determine who would be "rehired." Ms. Dinsdale was interviewed in Chicago in mid-June 1996; she told the supervisor about her colon cancer; its treatment which took her away from work one week per month; and her inability to lift heavy objects. The plaintiff said she wanted to return to work full-time; she assured the defendant her medical condition was no problem, but she had to pace herself due to fatigue. Despite her condition, the plaintiff was "rehired" and assigned to sales for grades K-5 in all 99 Iowa counties.

In February 1997, the plaintiff's new supervisor, Robert Goll, sent her a memo indicating she needed to improve sales efforts, establish priorities and increase her knowledge of math products. On [*6] February 27, 1997, Mr. Goll met with the plaintiff in Des Moines, Iowa, helping her to focus on four objectives for plan future sales efforts. By May 1997, the defendant still believed the plaintiff needed to increase sales in her territory. On May 22, 1997, at a meeting in Sioux City, Iowa, the plaintiff was placed on a Performance Improvement Plan (PIP), her sales goals adjusted down to 85 percent of her original goal. In Des Moines, Iowa, on June 24, 1997, the plaintiff met with her supervisor about a second PIP plan. On July 17, 1997, the plaintiff met with two supervisors in Chicago, where she was told she had not shown PIP progress. The plaintiff described her supervisors at the meeting as "critical" and "hostile." She was told she could continue working in accordance with PIP, or resign with severance pay. The plaintiff decided to continue working. On August 1, 1997, the plaintiff was informed about a third phase of PIP. The plaintiff did not meet these goals; her sales for the year were only 65 percent of her goal. On August 29, 1997, ten months after her treatment for cancer ended, the 61-year-old plaintiff was terminated from employment with three months severance pay. [*7]

Conclusions of Law

Americans With Disability Act
[HN7]
The Americans With Disabilities Act (ADA) prohibits discrimination by an employer against a qualified individual with a disability because of the disability of such individual. *42 U.S.C. § 12112(a).* [HN8] To obtain relief under the ADA, the plaintiff must prove that she was disabled within the meaning of the ADA, that with or without reasonable accommodations, she was able to perform the essential functions of her job, and that the employer discharged her in whole or in part because of her disability. See *Weber v. Strippit, Inc., 186 F.3d 907, 912 (8th Cir. 1999); Bizelli v. Amchem, 981 F. Supp. 1254, 1257 (E.D. Mo. 1997)*(Defendants were aware of plaintiff's testicular cancer, and the ADA was intended to ensure that former cancer patients are not discriminated against on the basis of their prior medical history).
[HN9]
Under the ADA, a "disability" is defined as (1) a physical or mental impairment that substantially limits one or more of the major life activities; (2) a record of such an impairment; or (3) being regarded as having such an impairment. *42 U.S.C. § 12102* [*8] (2). An "impairment" is any physiological disorder, cosmetic disfigurement, or anatomical loss affecting one of the body's systems, or any mental disorder. *29 C.F.R. § 1630.2(h).* "Major life activities" include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. *29 C.F.R. § 1630.2(i).* Sitting, standing, lifting and reaching are also considered major life activities. See *Weber, supra, at 913.* [HN10] "Substantially limited" is

Case 1:02-cv-00164-MHW    Document 36-5    Filed 10/17/2003    Page 5 of 6

Page 5
2000 U.S. Dist. LEXIS 12015, *; 10 Am. Disabilities Cas. (BNA) 1400

defined as (1) unable to perform a major life activity that the average person in the general population can perform; or (2) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average population can perform the same major life activity. *29 C.F.R. 1630.2(j)(1)*.

[HN11] The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. *Aucutt v. Six Flags Over Mid-America, 85 F.3d 1311, 1319 (8th Cir. 1996)*(citing *29 C.F.R. § 1630.2(j)(3)(i)*). Rather, [*9] a person claiming a disability must show that the impairment significantly restricts her ability to perform a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. Id. [HN12] Factors to be considered in assessing whether an individual is "substantially limited" in a major life activity are (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; (3) the permanent or long-term impact, or the expected long-term impact of the resulting impairment. *29 C.F.R. § 1630.2(j)(2)*. The Supreme Court recently held that the determination of whether an individual is substantially limited in a major life activity must take into account mitigating measures, such as medicines and assistive devices. See *Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 S. Ct. 2139, 2146-47, 144 L. Ed. 2d 450 (1999)*.

The plaintiff in this case claims she was terminated because she was diagnosed and treated for colon cancer. The plaintiff claims that colon cancer substantially limits her major life activity of working, and she is a covered person [*10] with a disability under the ADA who was able to perform, with or without accommodations, the essential functions of her job as a school book sales representative in Iowa.

The Eighth Circuit uses the burden-shifting analysis set forth in *McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)* in ADA cases. Under McDonnell-Douglas, [HN13] if the plaintiff produces sufficient evidence from which a reasonable trier of fact could find elements of her prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its decision to fire the plaintiff. Then, if the defendant meets its burden, the plaintiff must produce sufficient evidence from which a reasonable trier of fact could find the defendant's explanation to be a pretext, and the real reason for its failure to hire the plaintiff was intentional discrimination

It is undisputed that the plaintiff suffered from colon cancer, and there is no dispute that cancer can constitute a physical impairment under the ADA. *Bizelli, supra, at 1257*(citing H.R.Rep. No. 101-485, Pt.3, at 28 (1990), reprinted in, 1990 U. [*11] S.C.C.A.N. 445, 451. "Although the definition does not include a list of all the specific conditions, diseases, or infections that would constitute physical or mental impairments, examples include . . . cancer . . .")). The ultimate question here is whether Ms. Dinsdale's colon cancer qualified her as disabled under the ADA. See *Demming v. Housing and Redevelopment Authority, 66 F.3d 950, 955 (8th Cir. 1995)*(plaintiff's thyroid cancer did not prevent her from performing her duties on a daily basis; thus, plaintiff's condition did not fall within the statutory definition of disability); *Weber v. Strippit, Inc., 186 F.3d 907, 913 (8th Cir. 1999)*(that plaintiff's heart disease substantially impacts his cardiovascular system does not automatically render him disabled under the ADA).

The plaintiff was "rehired" in June 1996 by the newly merged company. The company was aware of plaintiff's cancer surgery and chemotherapy schedule which would mean she could not work one week each month through November 1, 1996, the last course of her chemotherapy. n1 Also, the plaintiff claims her supervisors questioned her often about her health. Neither Ms. Dinsdale [*12] nor her oncologist communicated to the defendant in any way that the plaintiff would be unable to perform her job duties. In fact, in June 1996, the plaintiff said she wanted to return to work full-time, and she assured the defendant that her medical condition was no problem. In other words, the plaintiff told the defendant that she was able to perform the essential functions of her job with or without accommodations. (The plaintiff testified in her deposition that after her diagnosis and surgery, she requested help with samples, mailings, and a consultant, and the company provided those accommodations.)

---

n1 She makes no claim under the Family and Medical Leave Act, she was given the time off she requested and does not claim to have been retaliated against for taking the time.

---

After her chemotherapy treatments, the plaintiff resumed work full-time; there is no indication from the record that the plaintiff was substantially limited in her ability to work. While the plaintiff's colon cancer was an impairment [*13] between November 1996 when her chemotherapy ceased and August 1997 when she was terminated, the cancer did not substantially limit the

Case 1:02-cv-00164-MHW    Document 36-5    Filed 10/17/2003    Page 6 of 6

Page 6

2000 U.S. Dist. LEXIS 12015, *; 10 Am. Disabilities Cas. (BNA) 1400

plaintiff's major life activity of working. This court simply cannot distinguish plaintiff's situation from the Demming case where the court found, as a matter of law, that the plaintiff was not disabled by thyroid cancer. The plaintiff was able to work full-time, travel for meetings, and otherwise perform the essential functions of her job. In August 1997 when the plaintiff was fired, she was not disabled under the definition set forth by the ADA.

Because the plaintiff was not disabled, this court need not engage in the McDonnell-Douglas burden-shifting analysis. The defendant's motion for summary judgment on this issue is granted.

ERISA

The plaintiff claims her employer discharged her to purposefully interfere with her employment benefits in violation of the Employment Retirement Income Security Act (ERISA). [HN14] ERISA provides that "it shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any [*14] right to which such participant may become entitled under the plan." *29 U.S.C. § 1140.*
 [HN15]
To make out a prima facie case of ERISA retaliation, the plaintiff must prove that: (1) she participated in a statutorily protected activity; (2) that an adverse employment action was taken against her; and (3) that a causal connection existed between the two. See *Jefferson v. Vickers, Inc., 102 F.3d 960, 964 (8th Cir. 1996); Rath v. Selection Research Inc., 978 F.2d 1087, 1090 (8th Cir. 1992).* [HN16] Using the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)*, if the plaintiff makes out a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the plaintiff's discharge. Then, if the defendant meets this burden, the plaintiff will prevail only if she can prove that the employer's proffered reason for the discharge is pretextual by presenting evidence that the employer acted with specific intent to interfere with her rights. *Jefferson, 102 F.3d at 964.* This specific intent can be [*15] shown with circumstantial evidence, but must be more specific than mere conjecture. Id. See also *Regel v. K-Mart Corporation, 190 F.3d 876, 881 (8th Cir. 1999)*(Reduction in work force is not pretext for interference with benefits in violation of ERISA); *Montgomery v. John Deere & Company, 169 F.3d 556, 561 (8th Cir. 1999)*(Employee failed to establish a prima facie case of ERISA retaliation, based on his contention that employer discharged him for refusing to elect early retirement).

In this case, the plaintiff claims that the defendant fired her to intentionally avoid paying retirement benefits. The plaintiff, hired at age 55 in 1991, would have needed to work a total of 10 years (or until 2002) before she would have been eligible for benefits. She was fired at age 61 in 1997, four years before she would have been vested for benefit purposes. The defendant has articulated a legitimate, non-discriminatory reason for firing the plaintiff: unsatisfactory job performance. In 1992 and 1993, the plaintiff received unsatisfactory job evaluations, with the company complaining of plaintiff's unresponsiveness to customer complaints. While the plaintiff's [*16] overall performance rating had improved by 1995, the company was still concerned about customer follow-up. In 1997, the plaintiff was placed on a performance improvement plan to help her meet sales goals, and she was unsuccessful in meeting those goals.

The plaintiff has failed to produce any evidence to show that interference with her ERISA benefits was a motivating factor in her discharge. The defendant has produced a history of the plaintiff's unsatisfactory job performance. The plaintiff has failed to show that the defendant's claim of unsatisfactory job performance was pretextual, and that the company's specific intent was to interfere with her ERISA benefits. The temporal proximity between plaintiff's pension vesting and her termination does not lend my inference of discrimination either. The defendant's motion for summary judgement is granted.

IT IS ORDERED

Defendant's February 1, 2000, motion for summary judgment (docket number 12) is granted. The Clerk of Court shall enter judgment in favor of the defendant.

April 13, 2000.

/s/

JOHN A. JARVEY

Magistrate Judge

UNITED STATES DISTRICT COURT