IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Robert Rivet | : |
|           Plaintiff | :   Case No. C-1-02-164 |
| v. | :   District Judge Susan J. Dlott |
| Ford Motor Company | :   ORDER |
|           Defendant | : |

This matter comes before the Court on Defendant's Motion for Summary Judgment (doc. #21). For the reasons that follow, the Motion is **GRANTED IN PART** and **DENIED IN PART**. The Court grants Defendant Ford Motor Company's motion as to Plaintiff Robert Rivet's age discrimination, breach of implied contract, and public policy claims. However, Rivet may proceed to trial on his ERISA discrimination claim.

### I.  BACKGROUND

Plaintiff Rivet was hired by Defendant Ford Motor Company on October 16, 1975. (Doc. #31, appx. A ¶ 2.) Rivet worked in various customer service positions with Ford in Pittsburgh, Pennsylvania and Cincinnati, Ohio from 1975 through 1992. (Id. ¶ 3.) In 1992, Ford sold the division in which Rivet then worked to Universal Computer Systems ("UCS"). Rivet was given the choice to accept employment with UCS or be terminated by Ford. Rivet accepted a job with UCS. (Id. ¶ 4.) USC terminated Rivet in November 1993 for failing to make his sales quota. Ford re-hired Rivet in December 1993 and gave him credit for his prior service. (Id. ¶¶ 5-6.) Rivet served as a Customer Service Manager for Ford upon his return. (Id. ¶ 6.)

In his new position, Rivet reported to a Dealer Operations Manager ("DOM"), who in turn reported to a Regional Manager. (Id. ¶ 7.) Rivet earned "Excellent" or "Excellent Plus" on all of his performance evaluations from 1994 to 1998, but on each evaluation his supervisors noted areas in which Rivet needed improvement. (Doc. #21, ex. 1 ¶ 5.) Ford employed a 7-point scale for evaluating employees–Outstanding, Excellent Plus, Excellent, Satisfactory Plus, Satisfactory, Satisfactory Minus, Unsatisfactory–and Rivet's rating from 1994 to 1998 was the equivalent of earning 5 or 6 points out of 7 possible points on each evaluation. (Id. ¶ 3.) Allen Walls became Rivet's Regional Manager in late 1998. (Doc. #31, appx. A ¶ 8.) Walls reviewed old personnel records for the Cincinnati region and became concerned that all employees in the region received ratings of Outstanding, Excellent Plus, or Excellent on their evaluations. (Doc. #21, ex. 1 ¶ 6.) Walls informed the DOMs operating under his authority that they would have to justify any future ratings of Excellent or higher. (Id. ¶ 7.)

Also in 1998, Ford undertook a nationwide restructuring in which the lowest-rated employees in each region were offered early retirement with special benefits, a package called the Enhanced Voluntary Resignation from Service Program ("VRS package"). (Id. ¶ 8.) Rivet was one of the three lowest-rated employees in Cincinnati and Walls offered him the VRS package. (Id.) Walls averred that he encouraged Rivet to take the VRS package because his future employment with Ford was in question. (Id. ¶ 9.) Conversely, Rivet averred that the VRS was presented as voluntary. (Doc. #31, appx. A ¶ 9.) Rivet refused the early retirement offer because he did not feel he could afford to retire with children in college. (Id.) The two other Cincinnati employees offered the VRS package, each under the age of 40 at that time, accepted the package. (Doc. #21, ex. 1 ¶¶ 8, 10.)

Steve Jefferson became Rivet's immediate supervisor in 1998 and gave him an "Excellent Plus" evaluation in February 1999. (Doc. #31, appx. A ¶ 10.) Jefferson testified at his deposition that Walls did not think Rivet deserved the high rating and that Walls instructed him to tell Rivet that he "should have taken the package." (Id., appx. B at p. 30-32.) In March 2000, Ford transferred Rivet to the position of Office Operations Supervisor ("OOS"), a position previously held by Walter Murphy. (Id. appx. A ¶ 11; doc. #21, ex. 1 ¶ 16.) Murphy had assumed Jefferson's DOM position because Jefferson had to take a medical leave of absence. (Id.)

Rivet was given an "Excellent" interim performance evaluation by his new supervisor, Lori Etchill, in September 2000. (Doc. #31, appx. A ¶ 12.) In December 2000, Etchill was transferred to Michigan, but she gave her subordinates a final evaluation before she left. Etchill rated Rivet as "Satisfactory Plus." (Id. ¶¶ 13-14.) Jorge Castillego became Rivet's supervisor after Etchill transferred to Michigan. (Id. ¶ 15.) On January 31, 2001, Castillego and Walls met with Rivet to give him his formal evaluation for 2001. They gave him a "Satisfactory" rating, the lowest of his career, and Castillego told Rivet it would be in his best interest to look for another job. (Id.) The written evaluation form cited specific areas in which Rivet needed to improve and stated that "[f]ailure to improve within the next 60 days may result in a Satisfactory Minus rating." (Doc. #21, ex. 2(B).)

On April 10, 2001, Rivet received a "Satisfactory Minus" rating and another warning to improve his performance within an additional 60-day period or risk termination. (Id. ex. 2(C).) On June 25, 2001, Rivet was rated as "Unsatisfactory" and Castillego recommended his termination. (Doc. #21, ex. 2 ¶ 10 & ex. 2(D); Id. ex. 3 ¶ 20; doc. #31, appx. D ex. 10.) The fact

that Rivet had been offered the VRS package in 1998 as one of the lowest-evaluated employees in the Cincinnati region was noted on the written recommendation for termination. (Doc. #31, appx. D ex. 10.) There is some dispute whether Rivet received the coaching and counseling dictated by Ford's established practice from the time he received his first "Satisfactory Plus" evaluation in December 2000 until his termination was recommended in June 2001. (Doc. #31, appx. A ¶ 17; id. appx. D at p. 19-20.)

Ford obtained the approval of several layers of Ford management and the General Counsel's office before notifying Rivet of his termination on July 25, 2001. (Doc. #21, ex. 3 ¶ 7.) Rivet was 49 years old at the time of his termination. (Rivet depo. p. 9.) Murphy, who is older than Rivet, took a voluntary demotion to return to the OOS position vacated by Rivet after Rivet's termination. (Doc. #31, appx. D p. 109; Rivet depo. p. 122-23.) Ford then promoted Matt Ignatowski, who was then 29 years old, to fill Murphy's position as DOM. (Id. appx. A ¶ 19; Id. appx. E ¶ 3.)

Subsequently, Rivet initiated this action against Ford on March 8, 2002. Rivet filed an Amended Complaint on December 12, 2002 in which he stated claims against Ford for (1) age discrimination in violation of state and federal law; (2) age discrimination in violation of Ohio public policy; (3) discrimination in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140; and (4) breach of implied contract. (Doc. #11.) Ford now moves for summary judgment on each of these claims.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).

The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  On those issues for which it shoulders the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (internal quotation and citation omitted and emphasis omitted).  For those issues where the moving party will not have the burden of proof at trial, the movant must "point[] out to the district court . . . that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  The nonmoving party "must set forth specific facts showing there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  If the defendant moves for summary judgment based on the lack of proof of a material fact, "[t]he mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient" to overcome the summary judgment motion.

Anderson, 477 U.S. at 252.  Thus, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50 (citations omitted).

**III.   ANALYSIS**

    **A.   Ford Is Entitled To Summary Judgment On Rivet's Age Discrimination Claim**

In his first cause of action, Rivet claims that Ford discriminated against him on the basis of his age in violation of the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.,* and Ohio Revised Code ("O.R.C.") chapter 4112.  Claims under the ADEA are analyzed under the burden-shifting McDonnell Douglas framework.  See Godfredson v. Hess & Clark, Inc., 173 F.3d 365, 371 (6th Cir. 1999).  Substantially the same framework is also used to analyze claims of age discrimination made pursuant to O.R.C. chapter 4112.  See Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988); Mauzy v. Kelly Servs., Inc., 72 Ohio St. 3d 1520, 664 N.E.2d 1272, 1276 (Ohio 1996).  "An employee may establish a claim under the ADEA by offering either direct or circumstantial evidence of age discrimination."  Wexler v. White's Fine Furniture, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (citation omitted).  "Direct evidence of discrimination is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'"  Id. (quoting Jacklyn v. Shering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999)).  "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred."  Id. (citation omitted).

Rivet does not proffer any direct evidence of age discrimination; rather, he attempts to prove age discrimination through circumstantial evidence.  A plaintiff trying to show age

discrimination by circumstantial evidence must first present evidence sufficient to establish a prima facie case of discrimination.  See Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 350 (6th Cir. 1998).  A prima facie case of age discrimination consists of four elements: "(1) the plaintiff was a member of the protected class, which is people at least forty years old; (2) he or she was discharged; (3) he or she was qualified for the position; and (4) he or she was replaced by a younger person."  Skalka v. Fernald Envtl. Restoration Mgmt. Corp., 178 F.3d 414, 420 (6th Cir. 1999).  "Once a plaintiff satisfies his or her prima facie burden, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action."  Ercegovich, 154 F.3d at 350.  "If the employer meets this burden, the burden of production shifts back to the plaintiff to show that the employer's nondiscriminatory explanation is a mere pretext for intentional age discrimination."  Id.  The burden of persuasion remains with the plaintiff at all times.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993).

It is undisputed that Rivet satisfies the first and second elements of his prima facie case because he was 49 years old in July 2001 when he was terminated by Ford.  Ford contends that Rivet cannot establish the third and fourth elements that he was qualified for his position and that he was replaced by a younger person.  Starting with the third element, a plaintiff must prove that he has met the legitimate expectations of his employer to establish qualification for the position at the prima facie stage.  See Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 661-64 (6th Cir. 2000).  The focus at the prima facie stage should be on objective criteria such as "the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required skills."  Wexler, 317 F.3d at 576.

Ford argues that Rivet did not meet its legitimate expectations as an Office Operations Specialist. Ford points to Rivet's declining rating on his evaluations, beginning with "Satisfactory Plus" in December 2000 and ending with "Unsatisfactory" in June 2001, as proof that he was not qualified for his position. (Doc. #21, exs. 1(D), 2(B), 2(C), and 2(D).) Ford's argument fails because it improperly conflates Ford's legitimate non-discriminatory reason for terminating Rivet with the prima facie case. The Court may not consider an employer's legitimate non-discriminatory reason for taking an adverse employment action when analyzing the prima facie case. See Wexler, 317 F.3d at 574; Cline, 206 F.3d at 661. Rivet, conversely, points to his approximately 25 years of experience with Ford and his first two evaluations in the OOS position as "Excellent" and "Satisfactory Plus" to establish his qualification. (Doc. #31, appx. A ¶¶ 12-14.) Rivet also points out that he did not receive a rating lower than a "Satisfactory" review until April 2001, after Castillego had become his supervisor and told Rivet it was in Rivet's interest to find another job. (Rivet Aff. ¶ 16.)

A different court in this District held that a plaintiff was qualified for his position when he had earned an award for being a top performer only two years before he was fired and before he had come under a new supervisor. See Chitwood v. Dunbar Armored, Inc., 267 F. Supp. 2d 751, 756-57 (S.D. Ohio 2003) (Judge Spiegel). Similarly, another court in this District found a plaintiff to be qualified for purposes of the prima facie case based on his generally satisfactory overall record, despite poor performance reviews the eighteen months before his termination. See High v. Genting/Castle, Inc., No. 2:01-CV-157, 2002 WL 31951256, at *11 (S.D. Ohio Nov. 13, 2002) (Judge Sargus). The facts here are analogous to those in Chitwood and High and are sufficient at the prima facie stage to prove objectively that Rivet was qualified for the OOS

position.

Ford also contends that Rivet cannot establish that he was replaced by a younger person, the fourth prong of his prima facie case. Rivet admits that Ford replaced him in the OOS position with Walter Murphy, who is older than Rivet. (Rivet depo. p. 122-23). Murphy had preceded Rivet in the OOS position before being promoted to the position of Dealer Operations Manager. Murphy volunteered for the demotion back to the OOS position. (Doc. #31, appx. D, p. 109.) Rivet argues that the fourth prong is satisfied because Ford promoted 29 year-old Matt Ignatowski to fill the DOM position vacated by Murphy instead of transferring Rivet to the new vacancy. (Doc. #31, appx. A ¶¶ 11, 19.)

Rivet cites no authority for the proposition that Ford had a duty to transfer or promote an underachieving employee to an open position, in lieu of terminating him.[1] Moreover, he does not provide any objective evidence that he was qualified for the DOM promotion given to Ignatowski. The Court does not infer age discrimination from the fact that Rivet's termination indirectly allowed for the retention and promotion of Ignatowski, a younger employee. Rivet

---

[1] Settled law from reduction-in-force ("RIF") cases suggests that Ford has no such duty. In a RIF, where employees may be terminated due to the employer's financial constraints rather than their own poor performance, employers are not required to transfer the displaced employees to new positions. See Ercegovich, 154 F.3d at 351. A failure to transfer is discriminatory in a RIF only if some displaced employees are permitted to transfer while others are denied the same opportunity based on their membership in a protected group. See id. If employers in a RIF situation have no duty to transfer employees who may have been performing satisfactorily, then other employers should not have a duty to transfer underachieving employees. This is particularly true here because the evidence suggests that Ford did not have a practice to transfer underachieving employees. (Doc. #21, ex. 1 ¶ 22.)

Rivet points to Ford's standardized evaluation forms that indicate that employees receiving a rating of "Satisfactory" and "Unsatisfactory" may be transferred to positions that are more suitable or have less responsibility. However, the forms clearly state that Ford has the option to terminate these low-rated employees instead. (Doc. #31, appx. B ex. 1.)

provides no evidence that Ford terminated Rivet from the OOS position with the intention of creating a promotion opportunity for Ignatowski. Rivet testified at his deposition that he believed that Ford terminated his employment so that Murphy, an older employee, could return to his former OOS position. (Rivet depo. p. 122-24.) If Rivet's personal beliefs have any probative value, they are evidence that he was terminated to benefit the career of an older employee (Murphy), not to create a promotion opportunity for a younger employee (Ignatowski). In sum, Rivet cannot prove the fourth element of his prima facie case.[2] Ford is entitled to summary judgment on Rivet's age discrimination claim because there is insufficient circumstantial evidence for a reasonable jury to conclude that Ford terminated Rivet on the basis of his age.

      **B.**      **Ford Is Entitled To Summary Judgment On Rivet's Public Policy Claim**

In his second claim, Rivet alleges that his termination constituted a wrongful discharge in violation of Ohio public policy. To establish a wrongful discharge claim in violation of Ohio public policy, Rivet must demonstrate the following:

> (1) a clear public policy existed and was manifested in a state or federal constitution, in a statute or administrative regulation . . . (the clarity element);
> (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element);
> (3) that the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4) that the employer lacked an overriding legitimate business justification for the dismissal (the overriding-justification element).

---

[2] In the appropriate circumstances, evidence that an employer terminated an employee over the age of 40 for the express purpose of creating a promotion opportunity for a younger employee, even to a different position, might be sufficient to satisfy the fourth element of the prima facie case. The Court does not seek to define here what the appropriate circumstances might be, but the circumstances would have to demonstrate the employer's age-based animus against the employee over the age of forty.

Taylor v. Volunteers of America, 153 Ohio App. 3d 698, 795 N.E.2d 716, ¶ 8 (Ct. App. 2003).

Rivet's public policy claim is based on Ford's alleged age discrimination against Rivet in violation of chapter 4112 of the Ohio Revised Code and the ADEA. The Court already has concluded that Rivet cannot establish a prima facie case of age discrimination. For the same reasons, he cannot establish the causation element of his public policy claim based on age discrimination. Accordingly, Ford is entitled to summary judgment on Rivet's public policy claim. See Godfredson, 173 F.3d at 375 (stating that success on public policy claim is contingent upon success of statutory discrimination claim); Irwin v. Marquette Med. Sys., Inc., 107 F. Supp. 2d 974, 989 (S.D. Ohio 2000) (same).

**C.    Ford Is Not Entitled To Summary Judgment On Rivet's ERISA Retaliation Claim**

In his third cause of action, Rivet states a claim for retaliation in violation of ERISA, 29 U.S.C. § 1140.[3] Under § 1140, it is illegal for an employer to "discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140. Rivet alleges Ford was motivated to terminate him, at least in part, because he refused to accept the VRS package and retire in 1998. To survive a motion for summary judgment, Rivet "must show a causal link between pension benefits and the adverse employment decision." Smith v. Ameritech, 129 F.3d 857, 865 (6th Cir. 1997).

There is no dispute here that Rivet refused the VRS package in 1998 or that Ford

---

[3] Contrary to Ford's protestations, an ERISA discrimination claim is commonly understood to be based on either (1) interference with the attainment of an ERISA right or (2) retaliation for the exercise of an ERISA right. See Abbott v. Pipefitters Local Union No. 522, 94 F.3d 236, 242 (6th Cir. 1996); Schwartz v. Gregori, 45 F.3d 1017, 1020-21 (6th Cir. 1995). Thus, Rivet correctly pleaded an ERISA retaliation claim in the third count of his Amended Complaint.

terminated his employment in 2001.  Ford's evidence indicates that Rivet was chosen for the VRS package because he was one of the three lowest-performing employees in the Cincinnati area.  (Doc. #21, ex. 1 ¶ 8.)  The issue on this claim is whether Rivet can establish a causal link between his refusal to take the early retirement package and his termination less than three years later.  For its part, Ford again points to Rivet's poor performance evaluation as the real reason for his termination.  Ford also cites to two decisions from districts outside of the Sixth Circuit, one of which is unpublished, for the proposition that the passage of time between Rivet's refusal of the VRS package in 1998 and his firing in 2001 is evidence that the two events are not causally related.[4]  Law in the Sixth Circuit is clear that close temporal proximity alone is not enough to create an inference of causal relationship, see e.g., Cooper v. City of North Olmstead, 795 F.2d 1265, 1272-73 (6th Cir. 1986), and, likewise, this Court holds that the lack of close temporal proximity alone does not refute the possibility of a causal relationship.

    Rivet points to statements by Ford management employees upon which a reasonable jury could conclude that Ford intended to terminate Rivet in retaliation for his refusing to voluntarily retire in 1998.  Steve Jefferson, Rivet's former supervisor, testified that Allen Walls, Ford's Regional Manager, disagreed with the "Excellent Plus" rating Jefferson gave Rivet in his February 1999 evaluation and instructed Jefferson to tell Rivet that "he should have taken the package."  (Doc. #31, appx. B at p. 30-32.)  Additionally, Walls informed the human resources officer completing the formal recommendation for Rivet's termination in 2001 that Rivet had refused a VRS in 1998 that he had been offered because of his status as one of the lowest-rated

---

[4] See Dinsdale v. Wesley, No. C98-0123, 2000 U.S. Dist. Lexis, 12015 (N.D. Iowa Apr. 13, 2000) and Humes v. McDonnell Douglas Corp., 922 F. Supp. 229 (E.D. Mo. 1996).

employees.  (Id. appx. D at p. 96-97.)  The human resources officers likewise noted the VRS offer and refusal on his termination recommendation.  (Id.)  Ford offers non-discriminatory reasons for these statements that a reasonable jury may choose to believe.  Nonetheless, a reasonable jury might view these statements as evidence that Ford's decision to terminate Rivet was based in part on his refusing to take the VRS package in 1998.  The Court cannot grant Ford summary judgment on the ERISA retaliation claim because the issues Rivet raised are best left to jury determination.

        **D.    Rivet Cannot Establish a Claim for Breach of Implied Contract**

In his fourth cause of action, Rivet alleges that Ford breached an implied employment contract whereby Ford would terminate employees only for cause and after progressive discipline.  Ford moves for summary judgment on this claim, arguing that Rivet was an employee at-will whom Ford could discharge at any time and for any reason.

In 1985, the Ohio Supreme Court re-affirmed the presumptive right of employers, absent an agreement otherwise, to terminate their employees at-will for any reason which is not contrary to law.  See Mers v. Dispatch Printing Co., 19 Ohio St. 3d 100, 483 N.E.2d 150, 153 (1985).  The high court instructed that courts should consider the facts and circumstances surrounding an oral at-will employment agreement to ascertain what took place, the parties' intent, and the existence of implied or express contractual provisions that alter the terms for discharge.  See id. at 154.  "Employee handbooks, company policy, and oral representations have been recognized in some situations as comprising components or evidence of the employment contract."  Id.  After Mers, courts interpreting Ohio law recognize both implied contract and promissory estoppel exceptions to the presumption of employment at-will.  See e.g., Ebie v.

13

Teledyne Inds., Inc., No. 87-3852, 1988 WL 98366, *2 (6th Cir. Sept. 21, 1988); Atkinson v. International Technegroup, Inc., 106 Ohio App. 3d 349, 666 N.E.2d 257, 265-66 (Ct. App. 1995).

      Rivet's claim fails because he cannot establish that a meeting of the minds existed between him and Ford to form an implied contract that he could be terminated only for cause. To recover on an implied-in-fact contract, "the proponent must prove that an agreement, based on a meeting of the minds of the parties and on mutual assent, existed, to which the parties intended to be bound." Lucas v. Constantini, 13 Ohio App. 3d 367, 469 N.E.2d 927, 929 (Ct. App. 1983) (citing Columbus, Hocking Valley & Toledo Ry. Co. v. Gaffney, 65 Ohio St. 104, 61 N.E. 152 (1901)). A meeting of the minds can be shown by the "surrounding circumstances including the parties' conduct and declarations, making it reasonably inferable that the parties intended to create binding and certain obligations." Campanella v. Commerce Exch. Bank, 139 Ohio App.3d 796, 745 N.E.2d 1087, 1095 (Ct. App. 2000).

      Rivet's evidence here supports only a finding that he had a unilateral expectation that he would be permitted to work thirty years and thus earn a full retirement benefits. (Rivet depo. p. 107.) Rivet testified in his deposition that he had never heard of any Ford employee with twenty years of experience being fired. (Id. p. 104.) However, he admitted that no supervisor at Ford guaranteed him thirty years of employment, and he did not sign nor was he aware of any paperwork guaranteeing him employment for a fixed number of years. (Id. p. 105-09.) Also, he could not identify an instance in which an employee whose performance was declining was permitted to transfer to another position in lieu of being terminated. (Id. p. 105-06.) Finally, Rivet did not learn that Ford had a multi-step process for disciplining and terminating employees

14

until after he had been terminated.  (Id. p.138-40.)  In sum, Rivet has produced no evidence from which a reasonable jury could conclude that he and Ford had a "meeting of the minds" that he would be terminated only after 30 years or for good cause.

Likewise, Rivet cannot prove the promissory estoppel exception to employment at-will existed in regards to his tenure at Ford.  To establish this exception, Rivet would have to prove that Ford made representations altering his employment at-will status upon which he relied to his detriment.  See Atkinson, 666 N.E.2d at 361.  Rivet cites to the testimony of Ford management employees to support this claim.  Steve Jefferson, Rivet's former supervisor who had given him "Excellent Plus" performance reviews, testified that he was aware of only one other employee whom Ford had terminated.  (Doc. #31, appx. B, p. 53.)  Jefferson's testimony has little if any probative value, as he admitted that he had no knowledge about the number of employees Ford would terminate companywide on an annual basis.  (Doc. #31, appx. B, p. 61.)

Additionally, Rivet cites to the testimony of Ute aus dem Bruch, a human resources planner, that Ford's policy is to treat its employees fairly, to coach and counsel employees whose performance is deficient to improve their status, and generally not to terminate automatically employees who engage in misconduct.  (Doc. #31, appx. D, p. 15-20.)  Ohio courts have found that evidence of a company policy to treat employees fairly or to utilize progressive discipline may be sufficient for a jury to conclude that an exception to employment at-will exists.  See e.g., Atkinson, 666 N.E.2d at 265-66 (finding company policy to treat employees fairly and to have "good reason" before terminating an employee to be evidence from which a jury could find an implied contract not to terminate without just cause); Bidwell v. Children's Med. Center, No. 16402, 1997 WL 736497, at *7-8 (Ohio Ct. App. Nov. 26, 1997) (finding written policy and

actual practice of progressive discipline were substantial competent evidence of an implied contract).

Nonetheless, the cases cited are distinguishable from and point to the fatal flaw in Rivet's case. In Atkinson and Bidwell, as well as in the other cases cited in Rivet's brief, the plaintiff knew about and relied on the company policy or practice creating the at-will exception. In Atkinson, the court noted that the plaintiff had "testified that he was aware of these polices and that he had observed them in practice with other employees." 666 N.E.2d at 266. In Bidwell, the company made representations concerning the progressive discipline and grievance procedures to employees in written policies. See 1997 WL 736487, at *9. Here, conversely, Rivet testified that Ford made no oral or written representations to Rivet that he would be employed for a fixed term or would be terminated only for cause. (Rivet depo. p. 105-09.) As to Ford's practice of following a multi-step discipline procedure, Rivet was not aware of the practice until after he was terminated. (Id. p.138-40.) It is fundamental that Rivet cannot establish a promissory estoppel claim when Rivet did not rely prior to his termination upon any representations Ford made. See Atkinson, 666 N.E.2d at 265. The Court concludes that Rivet was an at-will employee and Ford is entitled to summary judgment on Rivet's breach of implied contract claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Summary Judgment (doc. #21).  Summary judgment is granted in favor of Defendant Ford Motor Company on Plaintiff Robert Rivet's age discrimination, public policy, and breach of implied contract claims, but is denied as to Rivet's ERISA discrimination claim.

IT IS SO ORDERED.


                                              ___s/Susan J. Dlott_____
                                              Susan J. Dlott
                                              United States District Judge